· JAMES R. HODGES & CO. *v.* GEORGE A. HOWARD.

The memorandum in writing of a contract for a lease, must, to be sufficient under the statute of frauds, state the term for which the lease is to be made, if not the rent which is to be reserved upon it.

If a contract for the purchase of an estate be entered into and signed by the purchaser, and a deed of the estate afterwards taken by him, subject to a parol contract for a lease, between the vendor and another, of part of the estate sold, but the terms of the lease to be given, and which the purchaser assumes upon himself, be not stated in the contract of purchase or in the deed, no authority can be implied from the grantee to the grantor to sign a proper memorandum of the contract, as the agent of the grantee, after the estate is conveyed by the former to the latter; and if the grantor give such a memorandum to the proposed lessee, after his conveyance of the estate, the memorandum will not be deemed·to be referred to in the contract of purchase, signed by the grantee or in the deed accepted by him, if not expressly provided for in them, since it had no existence at the time of their execution.

Where, however, the purchaser of a building in the course of erection, a portion of which was subject to a parol contract for a lease for five years at a stipulated rent, made by the vendor with another, signed a contract to purchase the building, in which he expressly assumed upon himself the contract for a lease, but without stating in the contract so signed by him the terms of the lease, though these were, before his signature orally made known to him, and afterwards gave bond with sureties to perform the conditions of his purchase, and thereupon received a deed of the building, which expressly · subjected it to the parol contract for a lease, and the grantor, having no reason to believe that the grantee did not intend to fulfil the contract for a lease, subsequently to his conveyance of the building to the purchaser, gave a memorandum of the terms of his contract for a lease to the proposed lessee, signed, and sufficient under the statute of frauds to subject him to damages for a breach of the same: *Held*, upon a bill for a specific performance of the contract for a lease by the proposed lessee against the purchaser, that the latter was equitably estopped, under the circumstances, from setting up the statute of frauds against the former, as this would work a breach of trust and a fraud upon the proposed lessee, and upon the vendor; and that if the assumption of the contract for a lease was not so far a part of the contract of purchase as that the execution of the conveyance by the vendor was to be deemed in equity a part performance of it, the court would enforce the contract, to prevent the fraud attempted upon the proposed ··lessee and upon the vendor, and save the circuity of action by which the purchaser would, under his bond, be made to respond in damages equivalent to the value of the lease, through the vendor, to the plaintiff.

BILL IN EQUITY, to enjoin a suit at law, and to enforce specifically, on the ground of part performance, a parol agreement, by virtue of which the plaintiffs were to have a lease for five years of a shop in the Museum Building, so called, in Westminster Street, Providence, at a rent of $1,300 per year.

The plaintiffs, who were carpet dealers, had been tenants of a shop in a building of the ·same name, and which stood on the

13 *

same spot, under a ten years' lease from the former owner of the property, which lease was terminated by the destruction of the building by fire on the night of the 26th and morning of the 27th day of October, 1853, when their lease had about five years to run. Upon this casualty, Gamaliel Lyman Dwight, Esq., the then owner of the estate, consulted with the tenants of the building, including the plaintiffs, about rebuilding the same; and having agreed with some of them in writing, and with the plaintiffs by parol, that they were to take their old tenements, when completed for use, upon five years' leases, and at stipulated rents, the plaintiffs at a rent of $1,300 per year—their lease in other respects to be like their former one—made contracts for, and commenced the rebuilding of the building, in general, upon the plan of the former one; though it was in proof, that some slight alterations in the front and in the ground floors were made by him, at the suggestion, and for the convenience of his expected tenants, some of which pertained to the shop agreed to be taken by the plaintiffs.

On the 18th day of January, 1854, and whilst the building was in the course of erection, the defendant, by memorandum in writing, contracted with Dwight for the purchase of the estate at the sum of $25,000, almost the whole of which was to be paid by the assumption of two mortgages upon the property; and, as a part of the bargain, agreed to take off his hands the building contract, and to assume upon himself, and hold him harmless against, his contracts for leases aforesaid; and on the 20th day of January, 1854, gave to Dwight a bond in the penal sum of $50,000 with sureties, for the faithful performance of his part of the contract. The contract, which was separately executed from, as well as recited in, the bond, did not specify the terms of the contracts for leases, but was in these words: " The said Howard also assumes the lease to William C. Forbes, and the contract with Pardon Taber & Co. and James R. Hodges & Co. to lease certain stores in the said building, and to hold the said Dwight harmless therefrom;" but it was clearly proved, that the particulars of the lease to be given by Dwight to the plaintiffs were communicated to the defendant during his negotiations with Dwight, and distinctly assented to by him,

and from the subsequent admissions of the defendant, and state-ments made by him in conversation with the plaintiffs and others, that those particulars were well known to him.

In fulfilment of his part of the above contract, Dwight, by his deed dated the 18th day of January, 1854, but not acknowledged until the 23d day of January, 1854, in consider-ation of the said sum of $25,000, conveyed the estate to the defendant, expressly making the estate subject to the two mort-gages, and by the following clause, to the building contract and contracts for leases :—

" The said estate is also subject to a contract with Esek Tall-man to erect à building thereon, *and also to certain contracts in relation to leases of portions thereof, and subject to all which the grantee accepts this conveyance.*"   Subsequently, on the 6th day of March, 1854, the plaintiffs, who were desirous of having some written evidence of the terms of their contract, obtained from Dwight, who was on his deathbed, the following memo-randum :—

" PROVIDENCE, March 6, 1854.

" It was agreed between J. R. Hodges & Co. and myself, before the deed was got from me for that estate, that I should give them a lease of the store in the Museum Building then being built, to be of the same dimensions and shape as was the store in the building leased to them before the building was burned ; and that they should pay to me as rent therefor, the sum of one thousand, three hundred dollars, per year.   The lease so to be given, was to be for the term of five years, and on the terms and conditions contained in the lease they had formerly taken of the same store.   This lease was to be by me given and by them taken when the building should be ready for occupants.

(Signed)                    GAMALIEL L. DWIGHT."

About the middle of May, 1854, and whilst the building was yet in the hands of the contractor, and not ready for occupa-tion, the plaintiffs, who had some oil-cloths and other heavy goods coming, applied to the contractor for leave to put their goods into the store which they were to have, and to put up the fixtures in it necessary for their business.   The contractor

referred them to the defendant, who consented to their doing so, telling them, as he swore, at the time, that as their contract was by parol and binding on him only for a year, they could have the store on lease for a year, only.

That such notice was at that time given, was, however, denied under oath by both of the plaintiffs, and was quite inconsistent with what it was agreed on all sides afterwards took place. About the 2d of June, 1854, after the plaintiffs had got their goods into the store and put in fixtures, which the weight of the evidence proved cost them about $300, and which they would not have put in except on a five years' lease, the defendant, who had kept the keys up to that time and locked the door at night, tendered the keys of the store to the plaintiffs, as occupants for one year only, at a rent of $1,300, to commence on the 1st of June, 1854, he reserving a cellar under the store which by the agreement they were to have; but they refused to accept the keys on those terms. According to some of the testimony, they immediately told the workmen who were putting up their shop fixtures to stop work, and themselves left the store, as if they surrendered it to the defendant. They swore, however, that they merely left it at night, the defendant locking it up as usual, but refusing to let them in again in consequence of their refusal to accede to his terms of occupation. It was agreed however on all sides, that some two days after, they succeeded, without the leave of the defendant, in effecting an entrance into and taking possession of the store, claiming a right to possession under their contract for a lease of five years, and keeping the defendant out. During the first year of their occupation, they on each quarter day punctually paid, and the defendant accepted, rent, at the rate of $1,300 per year, according to the contract with Dwight; but upon the termination of the quarter ending September 1, 1855, the defendant accepted the rent tendered, only in part, demanding one hundred twenty-five dollars per quarter more, or rent at the rate of $1,800 per year, according to his notice, previous to the commencement of the quarter, given. The plaintiffs refusing to pay this additional rent, the defendant brought a suit to recover it in this court, to enjoin which, as well as to have a specific performance of the above con-

tract for a lease, the plaintiffs, immediately after, filed this bill.

The answer relied upon the statute of frauds, and met the allegations of the bill, as to part performance from the plaintiffs being let into possession and putting up fixtures in the store, by the averment, that the possession was allowed to be taken only on the express understanding that the plaintiffs were to have a lease for but one year; that it was subsequently surrendered by the plaintiffs to, and accepted by the defendant, and afterwards obtained by the plaintiffs, without the leave of the defendant, stealthily and with force, and as the defendant believed, by night, and afterwards by force retained by the plaintiffs.

Replication having been filed, and proofs taken and published, the case now came on for hearing.

*T. A. Jenckes*, for complainants :—

1st. There has been a note or memorandum in writing, signed by the respondent, ratifying and assuming the contract made by his grantor with the complainants, sufficient to satisfy the requirements of the statute of frauds, concerning a note or memorandum of the contract in writing, signed by the party to be charged.

The agreement for the sale of the Museum Building by Dwight, and its purchase by Howard, contains the following language : " The said Howard also assumes the lease to W. C. Forbes, and the contract with Pardon Taber & Co., and James R. Hodges & Co., to lease certain stores in said building, and to hold the said Dwight harmless therefrom."

The bond given by Howard for the faithful performance of Dwight's contracts, recites the agreement in full, containing the above-cited clause.

Both of these instruments are signed by George A. Howard.

The written memorandum need not be contained in a single paper, but may be made out by comparing and considering any two, or any number of papers together. Browne on Stat. of Frauds, 359, and cases there cited; *Allen* v. *Bennett*, 3 Taunt. 169; *Brettel* v. *Williams*, 4 Welsb. Hurl. & Gord. 623; *Jackson* v. *Lowe*, 1 Bing. 8; *Owen* v. *Thomas*, 3 M. & K. 353; *Verlander* v. *Codd*, Turn. & Russ. 352; *Salmon Falls Manuf. Co.* v.

*Goddard*, 14 How. 447; *Parkhurst* v. *Van Cortlandt*, 14 Johns. 15.

A memorandum of a bargain signed by the defendant, but ambiguous in some of its terms, may be read in connection with a bill of parcels subsequently made out by the seller and not signed by the defendant at all, for the purpose of explaining those ambiguities; though the former writing contain no reference to anything outside of itself, and the latter merely import a sale corresponding with that indicated in the memorandum. Browne on Stat. of Frauds, 362; *Salmon Falls Co.* v. *Goddard*, 14 How. 446.

If this be the rule in its application to the sale of chattels, it has a stronger application where the instrument containing the memorandum, and a part of the instruments by which it is to be explained, are under seal. The conveyance of the Museum estate, from Dwight to Howard, contains the following words: " The said estate is also subject to a contract with Esek Tallman, to erect a building thereon, and also to certain contracts in relation to leases of portions thereof, and subject to all which the grantee accepts the conveyance." The paper signed by Dwight, in the presence of Wm. S. Patten, which confirms all the parol evidence in the case relating to the contract, states that there was a contract with these complainants for a lease for five years, for the store in the Museum Building, when completed, at the annual rent of $1,300, on the same terms and conditions as those contained in the lease given by him to them before the burning of the building. That lease fully explains the references in the paper here referred to. " The statute does not absolutely exclude parol evidence. It only requires that there shall be a note of the contract in writing, in order to exclude fraud or mistake in its terms." Per Lord Abinger, *Allen* v. *Bennett*, 3 Taunt. 173, cited in Browne on Stat. of Frauds, 362. " A letter promising to make a deed for a tract of land '*according to contract*,' is a sufficient memorandum, without further specification of the terms; and it is enough for the party claiming the conveyance, to prove by one witness what price was agreed to be given for the land." *Johnson* v. *Ronald*, 4 Munf. 77, cited in Browne on Stat. of Frauds,

391. If this is sufficient to compel the execution of a deed, it certainly is authority for compelling the making of a lease. The greater must include the lesser.

It is clearly established, that there was a contract between Dwight and these complainants; that the contract was for a lease; that the lease was a lease of this store; that the term of the lease was fixed at five years; that the amount of rent was fixed; and that Howard was aware of this contract, its terms, and its conditions. The contract itself is conclusively proved to have been made with Dwight. Howard covenanted to assume Dwight's contracts, which contracts are specified, and this among them, and having so covenanted, he assumed this contract, and is bound to make this lease. The estate conveyed to him is expressly declared to be subject to this contract, among others, and his title is thus clothed with a trust to carry the contract into execution. And further; the original lease was for ten years; the fire occurred in October, 1853; the rebuilding commenced in the December following. It appears from the evidence of Mr. Tallman, that it was expected to have been completed some time before it was actually finished. The first five years of the original lease expired on the 10th of April, 1854; and it is from all these facts, a fair inference, that it was the intention of the parties that the contract now sought to be enforced, should be one for a lease which was to be a continuance of the terms of the original lease, made before the building was burned down, particularly, as that lease was referred to in all the arrangements and stipulations for the second, and as the term of the second is coincident with the unexpired term of the first. The denial in the answer of the respondent, of any knowledge of the contract for a lease for five years, between Dwight and the complainants, is disproved by five of the witnesses for the complainants, Messrs. Barstow, Hodges, Bucklin, Tallman, and Dike, and is not supported by any of the witnesses for the respondent.

2d. The contract for this lease has been in part performed by all the parties.

It was in part performed by Dwight. He rebuilt the Museum Building, with a view to this lease, among others. Alterations were made in the plans of the building, with a

view to the lease of the store by the complainants, and in all the arrangements made by Dwight for the erection and completion of the building, reference was had to the contract with the complainants.

It has been in part performed by the complainants. They were consulted with reference to the alterations in the plan of their store before the conveyance to Dwight, and afterwards. They assumed on themselves part of the payment for the alterations in the front of the store, and settled with the contractors after the building was completed and Howard had taken the control of it. They stored their goods with a view to the occupation of this store. They took possession of the store, and put up valuable fixtures which they proved would not have been put up had there been any belief, on their part, that their lease was for any other term than that specified in their contract. They refused to rent other stores, because they were bound by that contract. They refused to surrender this store for a bonus of four hundred dollars, offered by Howard.

It has been in part performed by the respondent. The respondent was aware of the alterations in the plan of the building, by Dwight, for the store of these complainants. He assented to those alterations; he assented to the possession by the complainants, and to their putting up fixtures; he assented to the alterations in the front of the store, which were not paid for till after he had taken full control of the building, and he made no effort to repudiate the contract, until it had been thus, in part, performed by him.

3d. Equity will compel the performance of a verbal contract in reference to land, and will relieve against fraud, notwithstanding the provisions of the statute of frauds, when that statute has been used as a cover for fraud. Browne on Stat. of Frauds, 434 *et seq.;* 5 Vin. Ab. 523, 524; *Walker* v. *Walker,* 2 Atk. 99. The attempt to set up the statute of frauds on the part of the respondent, to bar the relief prayed for by the bill, when there has been a part performance of the contract, is a fraud greater than those against which the statute provides.

Where one who had agreed to give the plaintiff a lease of land, upon which in consequence of the agreement the plaintiff had

entered and made valuable improvements, was desirous and anxious, when near his death, to fulfil his promise, but was prevented by the fraudulent contrivance of his relatives from seeing the plaintiff for that purpose, and died without executing the lease, the relatives who succeeded to the estate were afterwards compelled, in equity, to execute the lease. *Lester* v. *Foxcroft*, cited in 2 Vern. 456; and also in Browne on Stat. of Frauds, 436; 2 Story, Eq. Jurisp. §§ 759, 761–763, 768.

*Tillinghast & Bradley*, for respondent:—

1st. There is no writing here within the statute. The references in the bond and agreement signed by Howard, and annexed to the bill, cannot be construed as such, for they contain no terms of the contract whatever:

2d. Even were parol evidence admissible to connect such references with the former lease referred to in the bill, it is still contended, that there would be no writing, within the statute, of the contract in question. The term and rent must still be proved by parol, for the contract here insisted upon is a contract for a lease for five years, at $1,300 a year, while the contract that would be disclosed, by a reference to the former lease, for its terms, would be an entirely different contract; namely, a lease for ten years at $1,100 a year.

To bring a case within the statute, the writing must contain all the essential parts of the contract, so that the court may ascertain therefrom, and without the aid of parol evidence, what is the real contract to be enforced. 2 Kent, Com. 511; 1 Sugd. on Estates, (ed. 1843,) 118, &c. (marg. 166, &c.); *Bayley* v. *Ogden*, 3 Johns. R. 419; *Rose* v. *Cunnynghame*, 11 Ves. 550, 554; *Parkhurst* v. *Van Courtlandt*, 1 Johns. Ch. 273.

3d. But separate and distinct writings cannot thus be connected by parol. The former lease is not referred to either in the bond or agreement, and without such reference, may not be connected with and incorporated upon them by parol. *Brodie* v. *St. Paul*, 1 Ves. Jr. 326; *Clinan* v. *Cooke*, 1 Sch. & Lef. 22; *Morton* v. *Dean*, 13 Met. 385; *Parkhurst* v. *Van Courtlandt*, 1 Johns. Ch. 281.

The writing was signed by Dwight long after he had parted with the estate, and is the mere admission of a stranger. It is

therefore objected to as being inadmissible evidence against the respondent. 1 Cowen & Hill's notes, Phil. Ev. 655, and cases cited. There is no equity here on the ground of part performance.

A party relying upon part performance to take his case out of the statute, must clearly and unequivocally prove it, and show it distinctly to be referable exclusively to the contract set up in the bill. *Frame* v. *Dawson*, 14 Ves. Jr. 386; *Phillips* v. *Thompson*, 1 Johns. Ch. 149. Here, part performance in its legal sense does not exist. What was done was slight, and equally consistent with a tenancy for a year. See *Pilling* v. *Armitage*, 12 Ves. 78. The possession was obtained by force, and at first so held. Possession thus obtained, can confer no rights. *The Canterbury Aqueduct Co.* v. *Ensworth*, 22 Conn. 608.

Finally, this is an attempt to obtain $2,000 without consideration or equity, as appears from the value of the rent.

AMES, C. J. It is quite impossible for us to hold, that what has been actually signed by this defendant is such a memorandum of a contract for a lease, as will answer the demands of the statute of frauds. Even if we were to go as far, with egard to the rent to be reserved, as, in the case cited to us, the court of appeals of Virginia went, with regard to the price of the tract of land which was sold, as the memorandum showed, " according to contract,"—and allow *that* to be proved by parol, still, the term for which the lease was to be granted would remain to be ascertained; and that, it is well settled, cannot be, by anything short of written proof. *Clinan* v. *Cooke*, 1 Sch. & Lef. 22; *Abeel* v. *Radcliffe*, 13 Johns. 300.

As to the memorandum of the contract given by Dwight on the 6th of March to the plaintiffs, there is no express proof tending to show that he was authorized to give it, as the agent of the defendant, or that the defendant has since ratified his authority to give it; and it would not do to imply an authority from a grantee to a grantor to encumber the estate conveyed, by any act to be done by the latter, after he had parted with his entire interest in it to the former. The attempt to connect this memorandum of Dwight's with the contract and the bond re-

citing it, signed by the defendant in the January previous, equally fails; for the contract could not, by any possibility, have referred, at the time it was signed, to the memorandum, when the latter had no existence, and does not appear to have been thought of until months after.

We cannot, however, conceal from ourselves that the defendant, by refusing, under cover of the statute of frauds, to perform this contract, is attempting to practice a fraud, both upon Dwight's estate and upon the plaintiffs; and that, too, so far as we can see, looking through some circuity of action, without any ultimate benefit to himself.

It is beyond question, notwithstanding the defendant's attempt to show that the plaintiffs did not consider themselves bound by it at one time, that the plaintiffs and Dwight did enter into the contract for a lease set up in the bill; and that upon the faith of this and other contracts to hire his estate when rebuilt, Dwight did proceed to rebuild the Museum, and has, by his memorandum of the 6th of March, given to the plaintiffs such proof of his contract with them as to subject his estate to damages for the breach of this contract, if it be not performed by the defendant. It is also beyond question, that the defendant, with full notice of the particulars of this contract between Dwight and the plaintiffs, communicated to him at the time by the broker who negotiated the sale, assumed it upon himself by his written contract with Dwight, engaged and gave bond to hold him harmless against it, and finally accepted his deed of the Museum estate from Dwight, expressly stipulating therein that he would hold that estate subject to it. The assumption by the defendant of this contract for a lease, entered into and formed a part of the consideration which Dwight was to receive for the estate, as much as the assumption by the defendant of the two mortgages upon it. It does not appear that prior to the 6th of March, when Dwight gave to the plaintiffs the memorandum of his agreement with them, that any notice had been given by the defendant to him, or to the plaintiffs, that he did not in good faith intend to perform the contract to which it related, and which he had so repeatedly assumed upon himself; and, certainly, it cannot be doubted but that if the plaintiffs recover damages from

Dwight's estate for the breach of his contract, provable now against it by a memorandum sufficient within the statute of frauds, that the estate will be protected, to the extent of those damages, by the bond of indemnity given to Dwight by the defendant. The action will not be then upon the parol contract, but upon the bond; it will not be for damages for the breach of the parol contract, but for breach of the condition of the bond, whereby a loss has accrued to the estate of the obligee. No law, no equity, can protect the defendant against it; and refusing this remedy against him, will merely, after this circuity of action, visit upon him in substance the same liability, loaded with additional expenses and costs. This is the practical view of the question before us; and is there anything in the theory of the law which will compel us, under the circumstances, to turn the plaintiffs over to this circuitous course of obtaining justice against the defendant?

It certainly seems to us that there is such privity of contract in this matter between Dwight, the plaintiffs, and the defendant, as to deprive the defendant of the right to say that the plaintiffs are strangers, or third persons, as they are sometimes called, to the contract between Dwight and himself. He bought the estate of Dwight, subject to a trust concerning a portion of it, raised upon a consideration passing as between him and Dwight, the breach of which trust will subject Dwight's estate to a liability to the plaintiffs, against which he must indemnify it. The contract of Dwight to sell to him the estate, embraced, as part of it, the contract on his part to execute this lease to the plaintiffs. This contract has been, by his deed, wholly performed by Dwight; and the defendant accepted that deed subject to the performance of this contract, which constituted a portion of the very consideration which the defendant was to give, and Dwight to receive, for his estate. Under such circumstances, what element is wanting to make Dwight's conveyance enure as a part performance of this contract, in such sense, as equitably to estop the defendant from refusing to perform it by setting up the statute of frauds, the result of which refusal will be, to subject Dwight's estate to the plaintiffs, and the defendant to Dwight's estate, for the precise equivalent of the breach of trust, which,

by such refusal, the defendant would commit, to the injury both of the plaintiffs and of Dwight's estate. Upon the ground of equitable estoppel, to prevent fraud and a breach of trust, and save a circuity of action which must end at last in defeat of the scheme of the defendant, we feel authorized to do equity by enforcing, in the outset, against him, the specific performance of this contract. If this contract be not a part of, or so interwoven with the contract of purchase between the defendant and Dwight, as to make the conveyance of the latter to the former a part performance of it, and thus lift it out of the statute of frauds, the jurisdiction of this court, to prevent breach of trust and fraud, which lies at the bottom of the whole doctrine of part performance, still justifies us in holding, that the defendant is, under such circumstances, equitably estopped from setting up the statute; especially when, by so holding, we can stop litigation, by arresting the first step of the defendant in the circuity of action through which he is advancing, to the cost and injury of himself, as well as of the plaintiffs.

We prefer to rest our judgment upon this broader ground, which seems to us plain and intelligible enough, rather than upon the ground of a taking of possession of the premises by the plaintiffs, in part performance of and under their contract, with the assent of the defendant, and the expenditures in fixtures made by them upon the faith of their contract. Although there is some conflict of testimony, we think that the weight clearly inclines to the conclusion, that the plaintiffs took possession, with the assent of the defendant, and had expended nearly three hundred dollars, with his knowledge, in their shop fixtures, in the full faith that he would give them the lease that they had contracted for, and without the notice that they were to have but a lease for a year, which the defendant swears that he gave them. Had this possession been taken, and these expenditures been made, with the assent of the defendant, during, and as a part of the term, and had the possession been exclusive in its character, it would undoubtedly have been sufficient, under the authorities, to lift the contract out of the statute of frauds. Our doubt upon this part of the case arises from the fact, that the possession seems to have been taken by the plaintiffs as preliminary

14 *

to their possession under their contract, before the building was completed, by the joint license of the contractor, in whose hands it yet was, and of the defendant, to store their heavy goods which were arriving, and to put up their shop fixtures; that it was not exclusive, inasmuch as it is proven by one of the plaintiffs that the defendant kept the keys of the shop and locked it up every night, and, of course, let them in every morning; that on the first day of June, when, it seems from the days afterwards observed as the quarter rent days, the term, in the understanding of the parties, commenced, the defendant formally tendered to the plaintiffs the keys of the store upon a lease for one year only, which he informed them was all that they were legally entitled to, which they declined, and went off, he locking up the store after them, as one of the plaintiffs informs us, as usual; that they did not enter the store again until some two days after this, when they did it without the consent or even privity of the defendant, and against his will, as they well knew; since the evidence clearly shows, that for several of the first days of their subsequent occupation they held, and intended to hold, the defendant out by force. There is some conflict of testimony, too, as to the character and value of the shop fixtures; whether they were not such as to be quite as necessary for the occupation of the premises for a year, which the defendant was willing to accord to the plaintiffs, as for the term which they claim; and whether, indeed, such fixtures, removable by the tenant at the end of his term, and not proved, as these were not, to add at all to the permanent value of the estate, are such expenditures, incapable of compensation, in the legal sense, as take the case of a parol contract for a lease, in a court of equity, out of the statute of frauds.

We suggest these difficulties, without intending to pass upon them, as our reason for preferring the higher and clearer ground above stated, upon which we place our judgment. Let a decree be entered that the defendant specifically perform the contract for a lease in the pleadings mentioned, the case to be referred to a master to settle the terms and form of the lease in conformity thereto; that the defendant be perpetually enjoined from further

prosecuting the action for rent pending in this court, mentioned in the bill and answer, and pay all costs of this suit, including the costs of the proceedings before the master.